**PEFU FANIA, Plaintiff**

**v.**

**SIPILI ATUALEVAO and ATOA SIPILI, Defendants**

High Court of American Samoa
Land and Titles Division

LT No. 40-89

March 13, 1990

Before KRUSE, Chief Justice, TAUANU'U, Chief Associate Judge, and MATA'UTIA, Associate Judge.

Counsel: For Plaintiff, Charles V. Ala'ilima
 For Defendants, Togiola T.A. Tulafono

 This is a sad case. We have before us two aged brothers who are arguing over a piece of land which the next generation has already begun to sell off to third parties. Each claims to have arduously hewed the land from virgin bush.

*Introduction*

 The land involved is an area of 8.67 acres which the parties refer to as "Moso'oi." It is in fact a portion of the greater Tafuna plain which had become the subject of a somewhat disorderly land rush beginning in the mid 1950s. The race for land in the area picked up momentum with the creation of a road capable of vehicle traffic between the village of Ili'ili to the west and the Tafuna Airport to the east. The outcome was inevitable; a once luxuriant and relatively accessible tropical forest was quickly decimated in favor of a seemingly endless succession of land disputes before the Land and Titles Division.

 It was early realized that "individual" (as opposed to "communal") title claims to virgin bush land could be asserted by anyone who could successfully claim to have cleared and settled such land for himself.[1] At the same time, a claimant generally found that his quest for title registration (in accordance with the procedure set out in A.S.C.A. §§ 37.0101 et seq.) was in fact not a very complicated exercise if no one

---

 [1] An interesting historical inquiry into the origins of "individually" owned land is found in *Leuma·v. Willis*, 1 A.S.R.2d 48, 50 (1980).

objected to his claim.[2] Where, however, an objection was encountered, the matter was referred to the Land and Titles Division for resolution[3] and the claimant was put to proving that, indeed, it was he that originally cleared and maintained the area for personal use.[4] Additionally, the Fono had also earlier acknowledged, at least ostensibly, the free conveyance and inheritance of individually owned lands between American Samoans. *See* Pub. L. No. 7-19 (1962), Rev'd Code of American Samoa § 9.0103 (1961 Edition as Amended).[5]

The Tafuna plain thus held out, especially in the eyes of an emerging chain saw generation, opportunities and possibilities beyond one's mere subsistence agricultural needs. The area opened up overnight to the world of real estate speculation, albeit, in such a muddled fashion that it is now perhaps timely to consider appropriate land development criteria. *See Sese v. Leota*, 9 A.S.R.2d 25, 26-27 (1988), *aff'd*, 12 A.S.R.2d 18 (1989).

Against this background, we look to the facts.

*Facts*

We accept the disinterested testimony of neighboring land developers corroborating plaintiff's version of the facts as being more persuasive.[6] We find on the evidence that Pefu had commenced clearing the land "Moso'oi" at least as early as the year 1956. Chief A.P. Lutali

---

[2] A.S.C.A. § 37.0103 requires the public posting of any land claim for a period of 60 days. This enactment also directs that if no adverse claim is lodged within that 60 day period, and provided that all other requirements of the statute have been otherwise satisfied, the Territorial Registrar *shall* register title to that land in the name of the applicant.

[3] A.S.C.A. § 37.0104.

[4] *Leuma v. Willis, supra.*

[5] For a more detailed discussion of this enactment and its dubious validity (there were doubts raised about whether it had passed two successive legislatures as required by art. I § 3, and art. II § 9, Rev. Const. Am. Samoa, (1960)) *see Leuma v. Willis, supra*, at 54-55.

[6] The extent of defendants' case consisted of their own contradictory and uncorroborated testimony coupled with strained attempts to controvert and explain away unfavorable documentary evidence.

testified that he first worked in the vicinity in 1956 at a time when he was first elected to the position of Speaker of the House of Representatives. He also named those who were felling open bush at the time and stated that while he was clearing to the seaward side of the road, plaintiff and his wife were clearing and planting on the inland side. Another developer, Folole Falefia, testified that in 1959 she and her late husband began clearing adjacent to "Moso'oi." At that time she was only aware of Pefu working next to them. Both Lutali and Folole acknowledge, however, that the defendant Sipili Atualevao and his son Atoa Sipili subsequently worked in the vicinity although much later in time. Chief Lutali ventured the year 1963 and made the observation that at some time thereafter Pefu was noticeably absent from the locality. Folole, on the other hand, added that when Sipili and Atoa came into the area they actually started working Pefu's clearing inland.

We are satisfied on the evidence that Pefu permitted his brother Sipili to go on and cultivate the disputed land and that Pefu departed Tutuila in 1968 for an extended absence to take up a missionary assignment on Swains Island. In the meantime his brother Sipili and his nephew Atoa extended the clearing inland and continued to cultivate and maintain the land.

When Pefu returned to Tutuila in 1973, however, some tension over the land began to develop among the parties. A succession of individual attempts to claim the land were followed by a temporary reconciliation which lasted until the events which eventually gave rise to this action. It all started shortly after Pefu's return when he surveyed 7.567 acres of Moso'oi in 1975. We are not clear on the purpose of the survey; however, Pefu testified that he did not register the land on account of his brother Sipili and because of the insistence of their family matai.[7]

Sipili next surveyed a 2.05 acre tract of Moso'oi and posted his singular claim to the same on August 27, 1979. On September 9, 1979, Atoa filed with the Territorial Registrar's office a written objection to his father's claim on the ground that "[t]he said portion of land Moso'oi, is a communal land of Pefu F. Atualevao, Sipili F. Atualevao & Atoa S. Sipili." The matter was referred to the Office of Samoan Affairs for mediation and by memorandum dated November 20, 1979, the Deputy

---

[7] Our subpoena duces tecum to the Territorial Registrar for his records on the various attempts to register the land "Moso'oi" did not reveal a registration attempt at that particular time frame.

Secretary of Samoan Affairs certified to the Territorial Registrar that "[t]he claimant withdraw [sic] his survey of the portion of land involved in this case, but they [sic] re-register the original survey of the whole land under Pefu, Sipili and Atoa names. When registration is settled, then divide the land equally among the three of them."

This division never came about, but 18 months later Atoa took a lunge at registering the land in his name. In order, however, to comply with provisions of A.S.C.A. § 37.0102(a) requiring an accompanying survey, Atoa submitted his uncle Pefu's earlier mentioned 1975 survey which delimited 7.567 acres more or less. This attempt was met by his father Sipili's written objection in which he not only complained of a disobedient son but also alleged that he, Sipili, first cleared the land. The Territorial Registrar again referred the matter to the Office of Samoan Affairs for mediation, and ultimately the Office of Samoan Affairs reported yet another successful family settlement. This application to register was also withdrawn by the Registrar.[8]

Less than a year later, Sipili commissioned yet a further survey of "Moso'oi" which now reflected some 8.67 acres. On March 4, 1983, he offered the land as now surveyed for registration as his individually owned property. This time Pefu was the objector and in his adverse claim, filed on March 31, 1983, Pefu alleged his many years of labor on the land. However, by letter to the Territorial Registrar dated April 4, 1983, Pefu withdrew his objection stating that "[t]his matter has been settled by the two of us, Pefu Fania and Sipili Atualevao." This reconciliation, however, differed from those of previous occasions. This time, Sipili's registration application was not withdrawn, but the registration process was left to go to its logical conclusion. Thereafter, the Territorial Registrar registered title solely in the name of "Sipili Atualevao." Next, Sipili executed a document on February 15, 1985, which purported to authorize the Territorial Registrar to amend the registry to reflect that title to the land "Moso'oi" was held in common

---

[8] Pefu may not have been aware of these two instances of land registration attempts as evidenced by the respective "Surveyor and Pulenu'u Certificates" accompanying both applications. These certificates are mandated by A.S.C.A § 47.0102(c) to verify that the enactment's requirements of actual notice of the intended time and date of survey be given in the village by the pulenu'u "in order that other interested land owners might have an opportunity to be present thereat." Neither of these forms have been properly executed, nor do they reflect compliance with the statutory intendment of "actual" notice.

74

with his son Atoa.[9] Pefu, on the other hand, was out in the cold. He has had, until lately, unrestricted access to the land, and, indeed, he recently built on the land a home for which Sipili signed for the building permit. Pefu did not actually discover the completed registration until he recently learned that Atoa had sold a piece of the land. He was under the impression that nothing had been finalized with the land and that the land was in the process of being divided three ways between himself, his brother, and his nephew. His explanation for the withdrawal of his objection was that Atoa had come to him with the reassurance that the land would be divided three ways. He has since awaited Atoa's attendance to the division and was startled when he discovered that his nephew was selling off parts of the land without his knowledge or say. Following a verbal exchange with Atoa and being told that he had no interest in the land, Pefu retained counsel and suit resulted. Plaintiff complains of trickery on the part of his brother and nephew and prays for: an injunction against the further selling of Moso'oi; the imposition of a constructive trust on the defendants for his undivided one third interest together with an appropriate accounting of the sale proceeds; and an appropriate order dividing the land and providing for the registration of his interest accordingly.

*Discussion*

It is clear from the evidence that the parties had a consensus or understanding of co-entitlement to the land. This understanding is amply verified by the Territorial Registrar's records pertaining to the reconciliation exercise before the Office of Samoan Affairs which culminated in that referenced memorandum of November 20, 1979 --- to the effect that a survey would be redrawn to reflect a division of the land between Pefu, Sipili, and Atoa. Furthermore, Pefu's claim to entitlement was not without a convincing factual basis as attested to by the independent recollection of the neighboring developers. The need for Pefu's cooperation with Sipili's registration exercise was critical at the time, given the prospect of having to go to Court to counter third party corroboration of Pefu's claim that he had originally cleared the land from

---

[9] Apparently the Registrar acceded to this amendment request and then proceeded to issue a "Certificate of Registration" which contained factually inaccurate recitals to the effect that Atoa was an original co-applicant for registration.

virgin bush. Initial clearing of bush land and first occupancy is a necessary requirement for a claim of individual ownership.[10]

With regard to the withdrawal of Pefu's objection to his brother's sole claim to the land, the most believable conclusion in the circumstances is that he was relying, as he had testified, on Atoa's assurance that their understanding or consensus on a three way split would be pursued. As it turned out, Pefu's cooperation was induced by a ruse confected to permit the conclusion of the registration exercise[11] and therefore to preclude him from further laying claims to the land. For a while thereafter, this elderly man (Pefu is 77 years of age and Sipili 75 years of age) was not only kept in the dark but was also led to believe that the status quo was being maintained. His continuing access to Moso'oi was left undisturbed (until he started to get in the way of certain designs which Atoa, with his father's acquiescence, had for the land).

As opposed to the *three* way split which Pefu had anticipated and actually relied on when withdrawing his objection, the now registered titleholder, his brother Sipili, next undertook a *two* way split by persuading the Territorial Registrar to amend the Land Titles Register as if Atoa had been jointly involved with the registration process *ab initio*.

### Conclusion

In our judgment, the facts disclose a classic case of fraud --- that is, a situation where there has been a misrepresentation communicated to another person who is injured in relying upon it. *See* D. Dobbs, Remedies § 9.1 (1973). Actionable misrepresentation may be communicated verbally or non-verbally, and, in certain circumstances, even silence can constitute a communication. *Id.* In the case at bar, we have a family relationship and a common understanding of co-entitlement to the land which the defendants even acknowledged on public record. Pefu's meritorious claim to land plus his understanding of a three way split was clearly known to both defendants. His objection to his brother's registration effort was withdrawn because of his nephew's

---

[10] *See Government v. Letuli*, LT No. 016-63 (1963), *Haleck v. Tuia*, LT No. 1386-74 (1974), and *Fanene v. Talio*, LT No. 64-77 (1964) discussed in *Leuma v. Willis*, *supra* at 53-54.

[11] The only objector was Pefu who, as we have seen, had a plausible claim in derogation of defendants'.

76

misrepresentation that the status quo would be maintained. The defendants fostered that misrepresentation by allowing Pefu to continue with access or belief of entitlement to the land, even to the point of letting him build a home thereon while attempting a mere two way division of the land. Now, however, they want him out since the land is being sold. Plaintiff, on the other hand, has relied to his detriment on what has proven to be a charade on the part of his family. Undeniably, these are circumstances which attract equitable relief and the imposition of a constructive trust to prevent unjust enrichment which in equity and good conscience the defendants ought not to retain. A constructive trust is an equitable remedy, imposed to prevent unjust enrichment when property is acquired by fraud or breach of fiduciary duty. *McMerty v. Herzog*, 710 F.2d 429 (8th Cir. 1983). *See generally* 76 Am. Jur. 2d *Trusts* § 221 *et seq.* (1975); *see also Bozeman v. Sheriff*, 355 N.E.2d 624 (Ill. App. 1976); *Eiseman v. Lerner*, 380 N.E.2d 1033 (Ill. App. 1978). The fraud in this case is clear, as is the unjust enrichment. Pefu could have stopped the registration, but withdrew his objection in reliance not only on the representation but on the holding out that an equal division would be made. That reliance was real. An understanding among the parties of equal entitlement to the land was longstanding. A constructive trust in favor of Pefu and against the registered owners of the land is therefore imposed on both the land and the proceeds from its sale. An injunction is also hereby issued prohibiting the further sale of Moso'oi without the consent of plaintiff Pefu Fania.

Furthermore, we conclude that the Territorial Registrar's records pertaining to the land "Moso'oi" may be amended, consistent with the Court's decision herein, to reflect title in the names of all the parties, Pefu Fania, Sipili Atualevao, and Atoa Sipili, as tenants in common. Ordinarily, title to land registered pursuant to A.S.C.A. §§ 37.0101 et seq. may not subsequently be questioned and these statutory proceedings have been held to have *in rem* effect. *See Molitui v. Pisa*, 2 A.S.R. 268 (1947). However, where it has been clearly proved that title registration was procured by fraud, the registration may be disregarded.[12] *Ifopo v. Siatu'u*, 10 A.S.R.2d 66 (1989), *aff'd*, 12 A.S.R.2d 24 (1989). Here, the fraud against plaintiff was plain and distinct on the evidence. The

---

[12] The effect of our registration statute, A.S.C.A. §§ 37.0101 et seq., is not unlike the effect of the Torrens system of land title registration. Those jurisdictions which have adopted the Torrens system guarantee indefeasible title by the issuance of certificates of title upon an applicant's compliance with certain registration proceedings. Yet the courts have held that those certificates of title are not conclusive if registration itself was procured by fraud. *See, e.g., Henry v. White*, 143 N.W. 324 (Minn. 1913).

defendants took advantage of a family situation against an old trusting man to trick him out of his claim to land which the defendants have both acknowledged in the past. To permit the defendants to flaunt the registration enactments at plaintiff after inducing him to give up the pursuit of his rights thereunder is against equity and good conscience.

Judgment accordingly. It is so Ordered.